IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS E. PEREZ, Secretary of Labor, United States Department of Labor,<br><br>Plaintiff,<br><br>v.<br><br>TLC RESIDENTIAL, INC., a corporation; and FRANCISCO MONTERO,<br><br>Defendants. | No. C 15-02776 WHA<br><br><br><br>**ORDER DENYING MOTIONS FOR SUMMARY JUDGMENT** |

### INTRODUCTION

In this FLSA motion, defendants move for summary judgment (Dkt. Nos. 60, 70) and the Secretary moves for partial summary judgment (Dkt. No. 89). For the reasons that follow, both motions are **DENIED**.

### STATEMENT

Defendant Francisco Montero owns TLC Residential, Inc., a for-profit business that operates approximately 35 sober living homes in Northern California. Residents at these homes live in "family units" to recover from drug and alcohol abuse. One such resident at each home is a house "parent" or "manager" and assumes additional duties — including, but not limited to, running household meetings, performing administrative tasks for and reporting to defendants, and buying household supplies (Dkt. Nos. 70 at 3, 89 at 3–6). In exchange for these services, the house parents are not paid wages, but their rent to live in the homes is waived or discounted (Dkt. Nos. 70 at 3, 89 at 7).

Defendants argue summary judgment is appropriate because (1) the house parents are not "employees" within the meaning of the FLSA, (2) their free or discounted housing fully compensates them for their services even if they are employees, (3) the statute of limitations bars this lawsuit at least as to 45 former house parents, and (4) the free or discounted housing provided to the house parents offsets any liability for defendants' failure to pay wages pursuant to the FLSA (Dkt. No. 70 at 12–22).

The Secretary, on the other hand, argues partial summary judgment as to liability is appropriate because (1) the house parents are "employees" within the meaning of the FLSA, and (2) defendants never paid any house parents wages or maintained records of their hours worked pursuant to the FLSA (Dkt. No. 89 at 8–23). The Secretary requests that questions pertaining to damages be decided at trial (*id.* at 1).

**ANALYSIS**

**1.  LEGAL STANDARD.**

Summary judgment is appropriate if there is no genuine dispute as to any material fact. FRCP 56(a). A genuine dispute of material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).

**2.  FLSA.**

As defined in relevant part by the FLSA, "'employee' means any individual employed by an employer," "'[e]mployer' includes any person acting directly or indirectly in the interest of an employer in relation to an employee," and "'[e]mploy' includes to suffer or permit to work." 29 U.S.C. 203(d), (e)(1), (g). Courts have interpreted these definitions expansively "to effectuate the broad remedial purposes of the Act." *Real v. Driscoll Strawberry Assocs., Inc.*, 603 F.2d 748, 754 (9th Cir. 1979) (citations omitted). "The determination of whether an employer-employee relationship exists does not depend on 'isolated factors but rather upon the circumstances of the whole activity.'" *Boucher v. Shaw*, 572 F.3d 1087, 1091 (9th Cir. 2009) (citing *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730 (1947)). "The touchstone is the 'economic reality' of the relationship." *Ibid.* (citing *Goldberg v. Whitaker House Coop., Inc.*, 366 U.S. 28, 33 (1961)).

2

As a preliminary matter, while the Supreme Court's decision in *Goldberg* requires an evaluation of the "economic reality" of the case, the decision did not identify specific factors to be weighed in this evaluation. *Goldberg*, *supra*, at 33; *see also Gilbreath v. Cutter Biological, Inc.*, 931 F.2d 1320, 1324 (9th Cir. 1991). The Secretary's argument is organized according to six factors pulled from *Driscoll*, plus an additional two factors drawn from *Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290 (1985) (Dkt. No. 89 at 14–15). The six *Driscoll* factors are intended to help courts distinguish employees from independent contractors. *Driscoll*, *supra*, at 754. Here, however, the issue is not whether defendants' house parents should be categorized as employees versus independent contractors, but whether they are employees versus tenants (or possibly rehabilitation clients) for purposes of the FLSA, given the particular facts of this case. Thus, while the six *Driscoll* factors the Secretary cites may have some bearing on the "circumstances of the whole activity," they are of limited use in guiding the economic reality inquiry here. The remaining two factors the Secretary identifies come from *Alamo* and are more appropriate in this case, as this order explains next.

In determining whether an individual is an employee within the meaning of the FLSA under facts like those present here, our court of appeals has been guided by two Supreme Court cases: *Walling v. Portland Terminal Co.*, 330 U.S. 148 (1947), and *Alamo*. *Williams v. Strickland*, 87 F.3d 1064, 1066–67 (9th Cir. 1996).

In *Walling*, the Supreme Court concluded applicants for railroad brakemen positions who took a mandatory "practical training" course with the railroad for "seven or eight days" were not employees of the railroad for purposes of the FLSA, where the railroad received "no 'immediate advantage' from any work done by the trainees." *Walling*, *supra*, at 149, 153. In its rationale, the Supreme Court "articulated two limits to FLSA coverage." *First*, "the definition of employee was 'not intended to stamp all persons as employees who, without any express or implied compensation agreement, might work for their own advantage on the premises of another.'" *Second*, "the FLSA does not make a person 'whose work serves only his own interest an employee of another person who gives him aid and instruction.'" *Williams*, *supra*, at 1066 (citing *Walling*, *supra*, at 152).

3

In *Alamo*, "associates" — mostly former drug addicts, derelicts, or criminals — who worked for a nonprofit religious foundation received no salaries but were provided with benefits like food, clothing, and shelter. *Alamo*, *supra*, at 292. The associates "vigorously protested the payment of wages, asserting that they considered themselves volunteers who were working only for religious and evangelical reasons." *Id.* at 293. Nonetheless, the district court, applying the economic reality test, found the associates were "entirely dependent upon the Foundation for long periods" and expected the foundation to provide them with benefits that were "simply wages in another form." *Id.* at 293–94. Thus, the district court ruled they were employees covered by the FLSA. The Supreme Court affirmed, concluding the district court's findings were not "clearly erroneous" and the associates were employees within the meaning of the FLSA "because they work[ed] in contemplation of compensation." *Id.* at 301–02, 306.

In *Williams*, the plaintiff spent six months at an adult rehabilitation center of the Salvation Army. During that time, he worked for the center, participated in a rehabilitation program, and received food, clothing, and shelter, plus a small weekly stipend. *Williams*, *supra*, at 1064–65. Our court of appeals held the plaintiff was not an employee for purposes of the FLSA, noting that he had no express or implied agreement for compensation with the Salvation Army and his relationship with the Salvation Army was "solely rehabilitative." *Id.* at 1067. The decision distinguished those facts from the facts of *Alamo* — "where the associates['] work contemplated both rehabilitation and compensation" — and followed *Walling* instead. *Ibid.*

With *Walling*, *Alamo*, and *Williams* as its points of reference, the economic reality inquiry under the facts of this case should consider (1) whether "any express or implied compensation agreement" exists between defendants and their house parents; (2) whether the house parents work "for their own advantage" or for defendants' "immediate advantage"; (3) whether and to what extent the house parents are economically dependent on defendants; and (4) whether and to what extent the house parents' work, and their relationships with defendants, contemplates rehabilitation rather than compensation. This order considers each of these factors in turn.

4

*First*, there is no genuine dispute that a compensation agreement exists between defendants and their house parents. A finding that a compensation agreement exists would favor the Secretary's position and disadvantage defendants. However, the Secretary — who directly addresses this factor in his motion — argues any compensation agreement between defendants and their house parents would be "irrelevant to the question of employee status" because "Defendants, as a for-profit entity, cannot 'suffer or permit' House Managers to work for them without paying them the full federal minimum wage" (Dkt. No. 89 at 18). This argument could possibly be construed as a "dispute," but it is not a dispute of the facts and does not preclude summary adjudication of this factor. Importantly, defendants concede "there is no question that the house parents understood that they would receive free housing for [working]" (Dkt. No. 97 at 22–23). Thus, even construing the record in the light most favorable to defendants, summary adjudication of this factor is proper. This order therefore finds defendants and their house parents have a compensation agreement whereby the house parents "assume certain responsibilities" in exchange for free or discounted housing.

*Second*, there is a genuine factual dispute as to whether defendants or their house parents benefit more from the latter's work. The parties have presented competing evidence on this issue. Defendants claim the house parents' gain "in self-esteem, personal growth, and continued sobriety from taking on additional obligations" matches or exceeds the "undoubted[]" benefit defendants reap from the house parents' work (Dkt. Nos. 70 at 15, 84 at 10–11, 97 at 17). Defendants have provided declarations from a scientific researcher and numerous house parents in support of its claim. In disputing this claim, the Secretary argues with supporting declarations from other house parents that the reality of defendants' business model — assigning house parents "duties which are core operational, managerial functions of the business" — does not match the rosy picture defendants paint of "'social model' recovery" based on "helping behaviors" (Dkt. No. 78 at 18). The Secretary also details the importance of the house parents' work to defendants' business operations "on a day to day basis, and contends "the entire operation . . . relies upon the on-site House Managers" (*id.* at 20). This is at least

5

sufficient to raise a genuine dispute as to whether defendants or their house parents benefit more from the latter's work.

Defendants argue at length that this case is sufficiently similar to *Walling* (the brakemen case) to decide the house parents are not employees within the meaning of the FLSA as a matter of law because the house parents, not defendants, primarily benefit from their work (Dkt. Nos. 70 at 14–16, 84 at 9–11, 97 at 16–20). Defendants cite no authority for the proposition that a "benefits test" under *Walling* supplants the economic reality inquiry. Under the latter, as discussed above, the primary beneficiary of the house parents' work is relevant, but not dispositive, and is a disputed fact in this case. But even if primary benefit were a controlling factor, it would not compel summary judgment for defendants here because *Walling* is readily distinguishable. *Walling* involved railroad job applicants who trained with the railroad for only "seven or eight days," during which the applicants' work "[did] not expedite the company business, but . . . sometimes . . . actually impede[d] and retard[ed] it." *Walling*, *supra*, at 149–50. The *Walling* decision had the benefit of "unchallenged findings . . . that the railroads received no 'immediate advantage' from any work done by the trainees." *Id.* at 153. Unlike the railroad in *Walling*, defendants here, by their own admission, "undoubtedly" benefit from their house parents' work and the work period extends beyond seven or eight days.

*Third*, there is also a genuine factual dispute regarding whether and to what extent the house parents are economically dependent on defendants. To show that house parents are independent, defendants point out that most "have full-time jobs elsewhere and set their own schedules" (Dkt. No. 70 at 14), and provide declarations from house parents who "had outside employment or were in school" while working for defendants (Dkt. No. 97 at 14). The Secretary replies that a lack of "[c]omplete economic dependence on [defendants]" should not be dispositive here given that "[s]ome House Managers have worked for [defendants] for as long as 16 years" and "House Managers perform work for Defendants every day of the week, throughout the day and night" (Dkt. No. 78 at 13 & n.7). Neither side's evidence directly addresses or clearly resolves the question of dependence. It is possible that some house parents have sufficient alternative means of income to be independent, while others depend on

6

defendants for full-time permanent work. Since there is a factual dispute as to whether and to what extent the house parents depend on defendants, summary adjudication of this factor would be improper.

*Fourth*, there is a genuine factual dispute as to whether rehabilitation versus compensation is the defining element in the house parents' work. This factor overlaps with the second factor insofar as rehabilitation is the purported benefit to house parents from their own work. How that benefit measures up against the house parents' expectation of compensation is a different question from how it measures up against the benefit to defendants as a result of their house parents' work. The underlying factual disputes, however, remain the same. As discussed above, defendants describe at length how working in their sober living homes benefits house parents' rehabilitation and recovery, while the Secretary describes the relationship as a non-rehabilitative agreement to exchange business services for housing benefits. On this record, it appears likely that there are both rehabilitative and compensatory components to the working relationship between defendants and their house parents. That balance may well vary between individual cases, but where the balance tips and how it affects the FLSA issue should not be decided at the summary judgment stage.

Defendants cite *Williams* for the categorical proposition that "where individuals perform services for rehabilitative purposes . . . they are not employees, and thus the FLSA does not apply" (Dkt. No. 70 at 12). Defendants overstate *Williams*'s holding. Just because a "*solely* rehabilitative*" (italics added) relationship in *Williams* fell outside the scope of the FLSA does not mean that every alleged employer-employee relationship with any "rehabilitative" element is similarly exempt. Such an interpretation of the FLSA would directly contradict *Alamo*, which — as the *Williams* decision recognized — demonstrated that an employer-employee relationship can be found under the economic reality test even when the employees themselves claim their work is wholly for purposes other than compensation. Any rehabilitative element to the house parents' work is therefore relevant to, but not dispositive of, the economic reality of this case.

7

Although it does not pertain directly to any of the factors discussed above, defendants raise a good point about the unique nature of the "family household" arrangements at issue in this case. In many ways, defendants' relationship with their residents closely resembles that of a landlord with tenants. For example, defendants collect rent from their residents (*see* Dkt. No. 102 at 4), make necessary repairs, and provide amenities (Dkt. No. 84 at 7–8). Thus, defendants argue, the Secretary's theory that the FLSA covers the relationship between defendants and their house parents would produce absurd results — for example, that a master tenant who collects rent from roommates, divvies up chores, and buys household supplies is an employee of the landlord for purposes of the FLSA (*see id.* at 7). This argument must be seriously considered but is insufficiently developed to prevail at the summary judgment stage.

It is conceivable that the work done by house parents is truly primarily rehabilitative for the first months or even years of their service, but diminishes in rehabilitative value as time goes on and the house parents consistently maintain their sobriety. It is further conceivable that, as the rehabilitative value of work diminishes, the relationship between defendants and their house parents evolves over time to more closely resemble a landlord-tenant relationship — for example, where a landlord gives a tenant rent credits for doing household chores and yard maintenance. In such situations, the tenant is still a tenant without becoming an employee. However, whether that is the situation here should not be decided by summary adjudication.

Neither side has demonstrated that undisputed facts establish the economic reality of this case so clearly as to warrant summary judgment on the question of whether the house parents are employees within the meaning of the FLSA. Both motions for summary judgment as to this issue are therefore **DENIED**, except that summary adjudication as to one factor in the economic reality inquiry is **GRANTED** as described above. This order's conclusion as to that factor cannot be re-litigated at trial.

### 3.  STATUTE OF LIMITATIONS.

Defendants also move for summary judgment as to claims arising before June 19, 2013, citing a two-year statute of limitations for non-willful failures to pay wages under the FLSA (Dkt. No. 70 at 17–18). *See* 29 U.S.C. 255(a). The Secretary, on the other hand, contends a

three-year statute of limitations applies because defendants' actions in violation of the FLSA were willful (Dkt. No. 78 at 22–23).

To qualify as "willful" under the FLSA, an employer's conduct cannot be "merely negligent." Rather, "willfulness" means "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988). Here, neither side has shown that the undisputed facts establish defendants' willfulness — or lack thereof — as a matter of law.

Defendants contend their alleged violations of the FLSA were not willful because "[i]t is, and has been, the practice within the sober living industry for many years, that residents volunteer to serve as unpaid house parents in order to advance and maintain their own recovery from addiction" (Dkt. No. 70 at 19). The Secretary disputes the allegation that sober living homes "historically" provided house parents with free or discounted housing in lieu of wages (Dkt. No. 78 at 23). Specifically, the Secretary cites to the testimony of Dave Sheridan, who discussed in his deposition various different business models for sober living homes — some pay house parents wages, others do not (Dkt. No. 80-2). At minimum, this raises a factual dispute as to whether, as defendants claim, there is a sufficiently established practice in the sober living industry of treating house parents as non-employees that defendants' alleged violations of the FLSA were not willful — or whether, as the Secretary claims, defendants' lack of further efforts "to determine whether their actions complied with the FLSA" constituted "reckless disregard" for their legal obligations (Dkt. No. 78 at 22–23). Thus, summary judgment on the issues of willfulness and the applicable statute of limitations is **DENIED**.

### 4. DAMAGES.

Defendants also argue that even if the house parents are employees, they have been "fully compensated" because the free or discounted housing is a better benefit than a minimum wage salary would be (Dkt. No. 70 at 16–17). Defendants offer no explanation or factual support for their suggestion that offering house parents free or discounted housing is somehow mutually exclusive with paying them a salary. In fact, the Secretary offers the declaration of

9

another industry competitor (Dkt. No. 80-1, Exh. A-1 at 4 ¶ 9) to show it is possible to give house parents both a salary and free or discounted housing (Dkt. No. 89 at 3).

That being said, if it turns out that defendants' house parents are indeed employees for purposes of the FLSA, then it is highly likely the Court will consider crediting defendants for the free or discounted housing provided to house parents in determining the extent of "compensation" already paid. The Secretary is wrong to suggest defendants must pay the full amount of any owed wages in cash in addition to offering free or discounted housing. The details remain murky, so summary judgment is **DENIED** on this issue without prejudice to its renewal on a more developed record.

## CONCLUSION

Subject to the foregoing, both motions for summary judgment are **DENIED**.

**IT IS SO ORDERED.**

Dated: October 21, 2016.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

10