N. Rebecca A. Turner (SBN 222710)
**FOG CITY LAW GROUP**
952 School Street #452
Napa, CA 94559
855 7FOG-CITY Telephone
855 873 3792 Facsimile
Rebecca@FogCityLaw.com

Attorneys for Defendants
TLC RESIDENTIAL, INC., a corporation, and
FRANCISCO MONTERO, an individual

UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| R. ALEXANDER ACOSTA,[1] Secretary of Labor, United States Department of Labor, <br><br> Plaintiff, <br><br> v. <br><br> TLC RESIDENTIAL, INC., a corporation, and FRANCISCO MONTERO, an individual., <br><br> Defendants | Case No.: 15-cv-02776-WHA <br><br><br> **DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY ADJUDICATION** <br><br> Date:　　August 20, 2017 <br> Time:　　8:00 a.m. <br> Ctrm:　　8-19th Floor <br> Trial Date:　October 10, 2017 |

## I. INTRODUCTION:

This case arises out of an action by the U.S. Department of Labor ("DOL") against Defendants, TLC Residential Inc. ("TLC") and Francisco Montero ("Montero" and collectively "Defendants") a sober living home operator, wherein they ignore the unique nature of the sober living environment, and the evidence of the positive and lasting effects on house parents' sobriety and increased well-being from engaging in "helping behaviors" towards others in recovery; and instead attempt myopically recast the relationship between defendants and the house parents, by claiming they are employees subject to the Fair Labor Standards Act ("FLSA") who should be paid a cash minium wage for the time they spend performing certain

limited functions in TLC's sober living homes, as has been the industry standard for the past 40 years without interference from the DOL. By trying to recast this relationship, the DOL will negatively impact recovering addicts in the sober living community.

The DOL has refused to recognize that the residents of TLC's homes live as a family unit and that, as in traditional families, each member is responsible to the others. Like parents in a nuclear family, the house parents assume additional responsibilities to benefit the family. These duties primarily benefit the members of the household. The fact that TLC was organized as a "for profit" enterprise decades before Mr. Montero acquired it, does not change the fact that each home functions as a family, just in the exact same way the Level 1 Oxford Homes, who are not-for-profit, also function. To this end, Mr. Montero functions more as a landlord in this situation.

More importantly, the leading and most respected researcher regarding sober living, Douglas Polcin, EdD MFT, offers undisputed testimony that 1) TLC's model has been used for decades through the sober living industry; 2) "helping behaviors" are strongly associated with continued sobriety, even after the individual leaves the sober living environment; and 3) the house manager would benefit more as a fellow recovery volunteer than as an employee. The DOL is completely disregarding the unique relationships within the sober living homes and the benefit to the house parents engaging in helping behaviors. Instead, only willing to view the responsibilities assumed by the house parents solely through the prism of an employment relationship. TLC's relationship with its house parents in not unfair or exploitative and in fact yields a far greater benefit than would the DOL's proposed minimum wage, which would destroy the peer-to-peer model of recovery by turning house parents from peers in recovery to a policing authority in the house.

## II. BACKGROUND

Sober living homes are peer-managed residences that do not offer treatment or therapy. Instead, they provide a supportive environment free from alcohol and non-prescription drugs for individuals in recovery from substance abuse addiction. They have existed for about 40 years in California, without interference from the DOL TLC's sober living homes are modeled after a traditional family home, which is not subject to the FLSA. This model is standard in the industry and is the one used by TLC when Mr. Montero purchased the company. Declaration of Francisco Montero("Montero Dec.")¶ 7. Like any other family, the residents live together, and encourage, support, and assist one another to maintain their sobriety and learn to live without drugs or alcohol.

See Declaration of Julie Bento ("Bento Dec.") ¶¶ 4-5; see also Declaration of Dr. Douglas L. Polcin, ("Polcin Dec.") (ECF No. 60-1), Ex. 3, at 3 (sober living coalitions "require evidence of resident involvement in managing operations because peer support and empowerment are thought to be key factors in the success of SLHs [sober living homes]."). The "essential characteristics" of sober living homes include: 1) an alcohol and drug free living environment . . . 2) no formal treatment services but either mandated or strongly encouraged attendance at 12-step self-help groups such as Alcoholics Anonymous ("AA"), 3) required compliance with house rules such as maintaining abstinence, paying rent and other fees, participating in house chores and attending house meetings, 4) resident responsibility for financing rent and other costs, and 5) an invitation for residents to stay in the house as long as they wish provided they comply with house rules. Polcin Dec., Ex. 2, at 2.  As with other sober living homes, TLC's residents are required to take responsibility for themselves and to adhere to the aforestated characteristics.  See Bento Dec. ¶ 5.

### A. House Parents Assume Additional Responsibilities in the Sober Living Homes to Support Their Own Sobriety

Plaintiff contends that the responsibilities assumed by the house parents are the core services provided by TLC to its residents.  See Pl. Mem. at 12.   To the contrary, the core service that TLC provides its residents is a clean, safe residence.  See Montero Tr. at 25:25-26:11 (TLC provides residents with all utilities, cable and internet access); 37:20-39:3 and 41:6-20 (discussing the quality of TLC's homes); Montero Dec. ¶18.  While Plaintiff contends that the duties assumed by the house parents were central to TLC's functions, Defendants challenge those claims.

The responsibilities assumed by the house parents are central to their own recovery, but are not "core" to TLC's business.  As Mr. Montero testified, if TLC's paid staff, that is the District Managers, took over some of the responsibilities currently assumed by house parents (such as collecting and depositing any bed fees paid by cash or check), other responsibilities like running house meetings might be assumed by the residents as a group. See Montero Tr. at 92:421; Montero Dec. ¶¶ 9-18.  Other supposed "responsibilities" are not required by TLC. For example, House Parents do not enforce sobriety.  Only a resident could make and adhere to the decision to be sober.  Rather, the house parents, like all the other residents, agree to live in a sober environment and to call out residents who violate this key rule. See Montero Dec. ¶ 10.

Fog City Law Group
855.7Fog.City

**B. Helping Others to Achieve and Maintain a Sober Lifestyle is a Predictor of Continued Sobriety for the "Helper"**

Research shows that even after leaving a sober living home, residents' lives are positively affected and they are better able to maintain their sobriety.[1] See Polcin Dec. ¶ 9, Ex. 2 [2]; and id., Ex. 3[3]. As Dr. Polcin explains in his declaration, "helping behaviors" are strongly correlated with positive outcomes for the "helper."  At least one study has found "compelling evidence that recovering alcoholics who help other alcoholics maintain long-term sobriety following formal treatment are themselves better able to maintain their own sobriety." Polcin Dec. ¶ 22 and Ex. 7[4]. That "helping behaviors"are critical to the helper's own recovery has been encoded into the "12 steps" of Alcoholics Anonymous ("AA").  That is, a "continuing theme throughout AA principles is the critical importance of recovering alcoholics shifting their focus from self to others." Id at 2-3 (citations omitted). Research demonstrates the positive, long-term effect of helping others.  "Among those who were helping other alcoholics, 40% of participants avoided taking a drink in the year after treatment, whereas, among those who were not helping other alcoholics, only 22% avoided taking a drink." Id. at 6. The DOL completely ignored the fundamental and unique nature of the relationship within the TLC household and the voluntary assumption of duties by house parents, to their great benefit. The DOL has offered no scientific evidence or expert testimony to support its misguided theory that house parents would be better off receiving minium wage in an authoritarian employment environment rather than voluntarily engaging in peer to peer "helping behaviors" for the benefit of their own sobriety and others.

**III. LEGAL ANALYSIS:**

**A. Plaintiff's Motion for Summary Judgment Should be Denied Because the FLSA Does Not Apply to House Parents**

A motion for summary judgment will only be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Defendants understood that the house parents were volunteers and therefore did not pay them a cash wage but

---

[1] See Polcin Dec., Ex. 5, at 16 ("Improvements were found on measures of abstinence, peak density of alcohol and drug use (maximum number of days of alcohol or drug use during month of highest use), arrests, psychiatric symptoms, and employment. Importantly, improvements were noted at 6 months and for the most part maintained at 18 months, and residents maintained improvements after they left the SLH facility.")

instead gave them free housing, as is the custom for the overwhelming majority of the industry, and consequently had no reason to record the time spent performing any of the additional household responsibilities they assumed[2]. The issue before the Court therefore is whether Defendants are correct that the FLSA does not apply to the residents of TLC's homes who live as a non-traditional family unit, and specifically to the house parents who volunteered to take on additional responsibilities as part of their own recovery and continued sobriety. If so, Plaintiff is not entitled to judgment as a matter of law and its Motion for Summary Adjudication should be denied.

B. **Plaintiff Presumes that Because they Take on Duties Towards their Housemate, the House Parents are Employees Under the FLSA**

From the investigation stage up through this subsequent lawsuit, Plaintiff has operated from the premise that TLC's house parents are "employees" who are subject to the FLSA's minimum wage provisions when they are performing duties at the sober living homes. See Pl. Mem at 1.

There is no dispute that the house parents perform some duties in connection with the smooth functioning of the households. The parties disagree as to the significance of those duties. The Secretary contends that the duties assumed by the house parents are compensable work merely because TLC is a for profit entity. See Pl. Mem. at 2. The Secretary therefore argues that individuals who voluntarily perform duties for such an entity are employees subject to the FLSA's minimum wage requirements, ignoring that the primary benefit of these "helping behaviors," are to the house parents themselves and to fellow residents in the household. Defendants have never claimed that any FLSA exemptions apply to the house parents —but rather that the FLSA does not apply at all. 29 U.S.C. §203(e)(4)), begins with the statement that "[e]xcept as provided . . ., the term 'employee' means any individual employed by an employer." It also states that any person who is not "employed by an employer" is not an "employee." Id. § 203(e)(1). Likewise, in a wholly circular fashion, Section 203(d) states that "'Employer' includes any person acting directly or indirectly in the interest of an employer in relation to an employee . . ." Thus, while the Secretary reads the definition of "employee" to mean that except as specifically carved out from Section 203(e)(2)-(4), every "individual employed by an employer" is an employee (28 U.S.C. 203(e)(1)), the definition of "employee" is wholly circular. The FLSA does not apply at all where individuals live in a home

---

[2] Plaintiffs cite other sober living operators who pay their employees; however, plaintiff fails to point out that one operator has a 35 bed facility which puts it the same size as an entire district for TLC - where there is a paid TLC District Manager. (See Sheridan depo Exhibit to Plaintiff's own motion.) The other operator who claims to pay House Parents and still making a profit failed to mentions that he and the co-owner are paid houseparents who are paying themselves a salary. (See depo of "JB" Exhibit to Plaintiff's own motion.)

together as a family.  See City of Santa Barbara v. Adamson, 27 Cal.3d 123 (1980) (en banc).  Accordingly, where a house parent assumes responsibilities for themselves and their housemates, just as in any other family unit where the members perform services that benefit one another, then there is no basis for imposing a wage payment obligation on TLC[3].  Even more to the point, the testimony of Dr. Douglas Polcin completely undercuts the DOL's argument. Among the other things he testified to in his deposition, Dr. Polcin stated his opinion that if a house manager was considered or *characterized as an "employee"* of the provider of the sober living home as opposed to being a volunteer, that would be *an important factor in the outcome of their recovery* from addiction.  See Excerpts of Transcript of Deposition of Douglas Polcin, EdD("Polcin Tr.")at46:24-47:14.  Dr. Polcin further testified that the house manager would *benefit more as a fellow recovery volunteer* than as an employee.  Polcin Tr. at 46:24-48:9.  Dr. Polcin has also declared and testified to the fact that *each of the sober living homes that he observed in the course of his substantial career has had one or more residents who served in a voluntary role as a "house manager."* Polcin Dec.¶¶ 17-18(ECF No. 60-1); Polcin Tr. at 10:19-12:9.  Offering house parents the opportunity to support their own recovery by giving back to their community has been the pattern in the sober living community for many years.  See Polcin Tr. at10:10-12:9; Excerpts of Transcript of Deposition David Sheridan ("Sheridan Tr.") at 36:10-13, 61:4-8.  There is no dispute that when Mr. Montero purchased TLC, he continued to operate it in exactly the same way as it had been under the previous owners for 20 years.  Montero Tr. at11:16-24.

**C. Controlling Legal Authority Demonstrates that the House Parents Are Not Employees**

**1. The Economic Realities Demonstrate that the House Parents are Volunteers**

The Supreme Court has adopted an "economic reality" test to determine whether an individual is an employee under the FLSA. Tony & Susan Alamo Found. v. Sec'y of Labor, 471 U.S. 290, 301(1985).  Whether an employment relationship exists "does not depend on . . . isolated factors but rather upon the *circumstances of the whole activity*." [emphasis added] Rutherford Food Corp. v. McComb, 331 U.S. 722, 730(1947). "The issue of the employment relationship does not lend itself to a precise test, but *is to be determined on a case-by-case basis upon the circumstances of the whole business activity*." Donovan v. Brandel, 736 F.2d 1114, 1116 (6th

---

[3] The Secretary's actions in bringing this case illustrate just how far out of shape the Department of Labor has stretched the FLSA.  The FLSA "was passed by Congress to lessen, so far as seemed then practicable, the distribution in commerce of goods produced under subnormal labor conditions."  Rutherford Food Corp. v. McComb, 331 U.S. 722, 727 (1947).  TLC does not manufacture goods and the house parents are not engaged in producing goods under "subnormal labor conditions."

Cir.1984). Contrary to Plaintiff (see Pl. Mem. at 7-16), the economic realities of Defendants' relationship with the house parents demonstrates that they are not merely employees performing perfunctory tasks, but instead are volunteers who believe that "helping behaviors" foster their own recovery and those of their housemates. As Plaintiff notes, the "economic realities of the worker's relationship with the employer rather than the technical concepts of that relationship are the test of employment." Pl. Mem. at 7, citing Goldberg v. Whitaker House Co-op, Inc. 366 U.S. 28, 33 (1961). Yet Plaintiff attempts to prove a nonexistent employer-employee relationship by reference to such technical concepts. With respect to the economic realities, the "overarching focus of the inquiry is whether the worker is economically dependent on the alleged employer." Scantland v. Jeffry Knight, Inc., 721 F.3d 1312 (11th Cir. 2013); Donovan v. Dial America Marketing, Inc., 757 F.2d 1376, 1385, & n.11 (3d Cir. 1985). Here, the house parents are not "economically dependent" on TLC. They were in fact first paying residents of TLC's homes. The majority of them had outside employment or were in school. Even though they received free housing, there is no evidence that this made them wholly or even partially "economically dependent" on TLC, and Plaintiff has cited no evidence supporting that contention.

**2. Under Applicable Ninth Circuit Authority, the House Parents Were Volunteers and Not Subject to the FLSA**

In the Ninth Circuit, where individuals perform services for rehabilitative purposes, as is the case here, they are not employees, and thus the FLSA does not apply. See Williams v. Strickland, 87 F.3d 1064, 1068 (9th Cir. 1996) (recovering alcoholic sheltered by rehabilitation center who performed services for therapeutic purposes was not an employee under the FLSA where his "bargain . . . was solely rehabilitative and at no point was there an express or implied agreement for compensation."). The FLSA does not supply a clear definition of when an individual will be considered an "employee." Solis v. Laurelbrook Sanitarium and School, Inc., 642 F.3d 518, 522 (6th Cir. 2011) ("While the Act does define the terms "employee," "employer," and "employ," . . . the definitions are exceedingly broad and generally unhelpful.") (citing Henthorn v. Dep't of Navy, 29 F.3d 682, 684 (D.C. Cir. 1994)). Thus, whether an employment relationship exists is a fact-specific question. Laurelbrook, 642 F.3d at 522 ("it is the 'economic reality' of the relationship between parties that determines whether their relationship is one of employment or something else.") (citing Tony and Susan Alamo Foundation v. Secretary of Labor, 471 U.S. 290, 301 (1985)) (further citations omitted); see also Hale v. State of Arizona, 993 F.2d 1387, 1393-94 (9th Cir. 1993) (en banc) ("as a general rule, whether there is an employment relationship under the FLSA is tested by "'economic reality' rather than 'technical concepts.'" (citing Goldberg v. Whitaker House

Cooperative, Inc., 366 U.S. 28, 33 (1961)). Accordingly, whether an employment relationship exists may only be determined by *examining the totality of the circumstances*. [emphasis added] See Laurelbrook, 642 F.3d at 525 (rejecting Wage & Hour Division test as "overly rigid and inconsistent with a totality-of-the-circumstances approach, where no one factor (or the absence of one factor) controls."); see also Donovan v. Brandel, 736 F.2d 1114, 1116 (6th Cir. 1984) ("The issue of the employment relationship does not lend itself to a precise test, but is to be determined on a case-by-case basis upon the circumstances of the whole business activity.") (citing Rutherford Food Corp. v. McComb, 331 U.S. 722, 730 (1947) ("We think, however, that the determination of the relationship does not depend on such isolated factors but rather upon the circumstances of the whole activity.")). The Secretary argues that because TLC is not a "non-profit" organization, Williams does not govern this case. Instead, the Secretary will point to the Supreme Court's decision in Alamo. The facts of Alamo are entirely distinguishable from Williams. In Williams, the plaintiff, a man addicted to alcohol, was taken in by the Salvation Army and provided with shelter and an opportunity to perform services at the facility. In finding that he was not an employee, the Ninth Circuit noted that "Williams's work therapy was not performed in exchange for in-kind benefits, but rather was performed to give him a sense of self-worth, accomplishment, and enabled him to overcome his drinking problems and reenter the economic marketplace." Williams, 87 F.3d at 1067. By contrast, in Alamo, although the witnesses claimed that they were volunteers, the Court found that under the "economic reality test," they were employees of the Foundation's various commercial enterprises, who were not paid in cash but received benefits including room, board, clothing, medical benefits, and were totally dependent on the Foundation for long periods of time. See Alamo, 471 U.S. at 302, 304; see also Reich v. Shiloh True Light Church of Christ, 895 F. Supp. 799 (W.D.N.C. 1995) (11-16 year olds were employees of church-run vocational training program where they performed hazardous construction work; program was de facto commercial enterprise that benefitted from minor's unpaid labor), aff'd 85 F.3d 616 (4th Cir. 1996). That the purported "volunteers" in Alamo were laboring full-time, without payment, and with little or no control over their own schedules, all to make money to support the Alamos' huge business empire that was wholly unrelated to their religions, clearly distinguishes that case from Williams, in which the plaintiff's services were therapeutic and benefitted his own recovery from addiction. The Supreme Court has recognized this distinction for many years. An individual who, "without promise or expectation of compensation, but solely for his personal purpose or pleasure, worked in activities carried on by other persons either for their pleasure or profit," is outside the sweep of the FLSA. Alamo,

471 U.S. 290, 295 (1985) (quoting Walling v. Portland Terminal Co., 330 U.S. 148, 152 (1947) [trainees were not employees]).  Here, as in Williams, and unlike Alamo or Shiloh, the house parents have taken on additional responsibilities for rehabilitative purposes, to advance their own recovery for an entity whose only purpose is recovery.  Most have full-time jobs elsewhere and set their own schedules.  Accordingly, they are not employees subject to the FLSA.

**3. Under the "Benefits Test," the House Managers are Not Employees**

As the cases discussed above make plain, whether an individual is engaged in compensable work may be determined by looking at who benefits from the effort –the individual or the purported employer. See Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123, 321 U.S. 590, 598 (1944) (superseded by statute) ("in the absence of a contrary legislative expression, we cannot assume that Congress here was referring to work or employment other than as those words are commonly used —as meaning physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business."); see also Portland Terminal, 330 U.S. at 152 (stating that the definition of "employee" was "not intended to stamp all persons as employees who, without any express or implied compensation agreement, might work for their own advantage on the premises of another.").  Although few cases (except Williams) address the rehabilitation context, the situation in a sober living home is similar to that found in the school and training environments.  That is, like students or trainees, the residents are the primary beneficiaries of the roles they assume in the home.  That is, where they engage in "helping behaviors," they receive substantial and longlasting benefits.  See Polcin. Dec. ¶¶ 22-25.  Accordingly, under the benefits test, they are not employees.  See Portland Terminal, 330 U.S. at 152; Laurelbrook, 642 F.3d at 526 (vocational school students were not employees; "identifying the primary beneficiary of a relationship provides the appropriate framework for determining employee status in the educational context.").  While TLC undoubtedly benefitted from the house parents' assumption of additional obligations, it was not the primary beneficiary.  That is, the house parents gained as much or more in self-esteem, personal growth, and continued sobriety from taking on additional obligations than they spent performing these duties.  See Polcin. Dec. ¶¶ 21-25; see also Montero Dec. ¶¶9-18.  By contrast, in both Alamo and Shiloh, the primary benefit was to the employing entity which exploited the employees' efforts.  See Alamo, 471 U.S. at 302, 304; Shiloh, 895 F. Supp. at 817-18.

Unlike Alamo and Shiloh, which were business enterprises designed to and which did operate profitably through exploiting unpaid labor inputs, TLC could forego house parents altogether and operate under an entirely different system. That is, a paid District Manager or other staff could conduct urinalysis tests and purchase supplies. The residents could forego periodic house meetings, not submit house reports, and could even ignore the rules regarding continued sobriety. None of those changes would affect TLC or Montero. In fact, TLC's revenues likely would rise as a result of collecting bed fees from former house parents. They would, however, profoundly negatively affect the [former] house parents and the other residents. This is not a regular employment environment as the DOL would like to portray. As Dr. Polcin explains, sober living homes are structured environments that implement the social model of recovery while at the same time providing consistency and support to their residents. See Polcin Dec. ¶¶ 10, 16-17, 19. Under such circumstances, the house parents cannot properly be classified as employees and the dangerous meddling by the DOL into the recovery of TLC residents should be rejected by the court.

### IV.     CONCLUSION:

Based on the foregoing, Defendants respectfully request that the Court deny the Secretary's Motion for Summary Adjudication in its entirety.

Dated: July 20, 2017                               FOG CITY LAW GROUP

                                               /s/ N. Rebecca A. Turner
                                              N. REBECCA A. TURNER
                                              Attorneys for Defendants
                                              Francisco Montero and
                                              TLC Residential, Inc.

2. Douglas L. Polcin, EdD, Rachael Korcha, M.A., Jason Bond, Ph.D., & Gantt Galloway, Pharm.D.: What Did We Learn from Our Study on Sober Living Houses and Where Do We Go from Here?, at 2, available at http://www.ncbi.nlm.nih.gov/pubmed/21305907, published in 42 J. Psychoactive Drugs, vol. 4, 425-433 (Dec. 2010)

3. Rachael A. Korcha, Douglas L. Polcin, Amy A. Mericle, & Jason Bond: Sober Living Houses: Research in Northern and Southern California, J. Addiction Science & Clinical Practice, 10 (Suppl. 1): A30, at 1 (Feb. 2015)), available at http://www.ncbi.nlm.nih.gov/pmc/articles/PMC4347505/;Polcin Dec., Ex. 4 (Douglas L. Polcin, EdD, MFT & Diane Henderson, B.A., A Clean and Sober Place to Live: Philosophy, Structure, and Purported Therapeutic Factors in Sober Living Houses, 40 J. Psychoactive Drugs, vol. 2,153-159 (2008),at 3, available at http://www.ncbi.nlm.nih.gov/pmc/articles/PMC2556949/

4. Maria E. Pagano, Ph.D., Karen B. Friend, Ph.D., J. Scott Tonigan, Ph.D., and. Robert L. Stout, Ph.D., Helping Other Alcoholics in Alcoholics Anonymous and Drinking Outcomes: Findings from Project MATCH, 65(6) J. Stud. Alcohol 65(6): 766-73 (November 2004) ("Helping Other Alcoholics"), author manuscript at 1, available at http://www.ncbi.nlm.nih.gov/pmc/articles/PMC3008319/pdf/nihms253314.pdf

Fog City Law Group
855.7Fog.City