IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

R. ALEXANDER ACOSTA, Secretary of Labor, United States Department of Labor,

Plaintiff,

v.

TLC RESIDENTIAL, INC., and FRANCISCO MONTERO,

Defendants.

No. C 15-02776 WHA

**ORDER HOLDING IN ABEYANCE MOTION FOR DEFAULT JUDGMENT AND ORDER TO SHOW CAUSE**

**INTRODUCTION**

Plaintiff in this FLSA action moves for default judgment against the corporate defendant following entry of default by the clerk. The motion is **HELD IN ABEYANCE** pending an evidentiary hearing on the question of defendant's subjective good faith. The corporate defendant and defense counsel are further **ORDERED** to show cause at the evidentiary hearing why default judgment should not be entered.

**STATEMENT**

The Secretary commenced this action under the Fair Labor Standards Act against defendants TLC Residential, Inc., and its owner Francisco Montero in June 2015. The Secretary contended defendants' "house parents" were employees under the FLSA and therefore entitled to wages thereunder. The substance of the Secretary's claims has been laid out in prior orders and need not be repeated here (*see* Dkt. Nos. 106, 215).

The original case management order set trial for December 2016 (Dkt. No. 19). In September 2016, however, defense counsel moved to withdraw (Dkt. No. 98). A prior order granted that motion (Dkt. No. 114). To accommodate defendants' loss of legal representation, an amended case management order postponed the trial date to May 2017 (Dkt. No. 124). The fallout from counsel's withdrawal and defendants' rocky transition to new counsel, however, took several more months to resolve and necessitated further extensions of the case management schedule, including yet another postponement of the trial date to October 2017 (*see, e.g.*, Dkt. Nos. 160, 172, 173, 175).

This action did not stay on track for long. In August 2017, new defense counsel also moved to withdraw (Dkt. No. 194). In advance of the motion hearing, an order required defendants to "retain substitute defense counsel before September 28" and further required Montero and new defense counsel to appear at the hearing (Dkt. No. 198). Another order followed shortly thereafter and repeated the requirement (Dkt. No. 200). Despite these orders, Montero appeared pro se at the hearing without new defense counsel to represent his corporation. At that hearing, the undersigned judge again stressed to Montero that failure to retain counsel for TLC Residential would result in default judgment against the corporation (*see* Dkt. No. 211). An order to show cause why default should not be entered against TLC Residential issued, with a follow-up hearing scheduled for two weeks later (*see* Dkt. No. 206).

Montero did not appear at the follow-up hearing. Nor did new defense counsel. A second order to show cause why default should not be entered against Montero issued (Dkt. No. 211). At the Court's direction, the clerk also entered default against TLC Residential, which remained unrepresented despite multiple orders and ample opportunity to obtain legal counsel (*see* Dkt. No. 209). As a result of all these problems, the Court again postponed the trial date, this time to March 2018 (Dkt. No. 214).

The Secretary now moves for default judgment against TLC Residential, seeking to (1) require TLC Residential to pay the balance of unpaid wages owed plus an equal amount as liquidated damages, totaling approximately $2.3 million, and (2) enjoin TLC Residential from committing future FLSA violations (Dkt. No. 219). In lieu of an opposition, the general

2

1  manager of TLC Residential, Pamela Davis, filed a letter on its behalf briefly summarizing its
2  unsuccessful efforts to retain counsel and requesting an extension of time to do so (Dkt. No.
3  223). An order denied that request. At this point, the case was still in no shape to go to trial, so
4  the same order postponed the trial date yet again to April 2018, where it currently remains (Dkt.
5  No. 225). The Secretary then filed an objection to TLC Residential's letter, pointing out its
6  various improprieties and requesting "that any future filings for Mr. Montero be written, signed,
7  and filed by Mr. Montero only" (Dkt. No. 226). This order is based on the foregoing filings and
8  oral argument.

**ANALYSIS**

1. **DEFAULT JUDGMENT.**

Federal Rule of Civil Procedure 55(b)(2) permits a district court, following default by a defendant, to enter default judgment. "The district court's decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). In determining whether default judgment is appropriate, the district court may consider (1) the possibility of prejudice to the plaintiff, (2) the merits of the plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986). Where default judgment is granted, the scope of relief is limited by FRCP 54(c), which provides that "default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Upon entry of default, all factual allegations in the complaint are accepted as true save and except for those relating to the amount of damages. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987).

The first *Eitel* factor weighs in favor of default judgment because the Secretary has diligently pursued his claims and would be left without a remedy if Montero and TLC Residential, by continuously failing to retain or keep counsel, are permitted to mire this litigation in limbo indefinitely.

The second and third *Eitel* factors weigh in favor of default judgment because the Secretary's factual allegations, which have never been challenged for sufficiency and are accepted as true for present purposes, support his claims that TLC Residential failed to pay minimum wages and to keep records as required by the FLSA (*see* Dkt. No. 207-4 ¶¶ 8–11).

The fourth *Eitel* factor weighs in favor of default judgment. Although the amount of money at stake — $2.3 million — is high, it stems from the Secretary's efforts to obtain lost wages and statutory liquidated damages for 183 employees over a period of approximately five years (*see* Dkt. No. 219 at 11). As discussed further below, this amount is adequately supported by the Secretary's documentation.

The fifth *Eitel* factor weighs against default judgment because, as prior orders have held, genuine disputes of material fact precluded summary judgment as to whether or not TLC Residential's house parents were actually "employees" under the FLSA (Dkt. Nos. 106, 215). Those remaining factual disputes, however, do not raise sufficiently serious doubts about the merits of the Secretary's substantive claims to preclude default judgment.

The sixth *Eitel* factor weighs in favor of default judgment because, as described above, the default against TLC Residential did not come about as a result of excusable neglect.

The seventh *Eitel* factor weighs against default judgment, but not strongly. In general, of course, cases should be decided on the merits "whenever reasonably possible." *Eitel*, 782 F.2d at 1472 (citation omitted). As explained, however, despite extensive discovery, motion practice, and multiple accommodations by both the Court and the Secretary, defendants' failure to retain and keep legal counsel has time and again frustrated attempts to bring this matter to a final resolution on the merits. At this point, the merits have already been demoted to a footnote in a protracted struggle over defendants' legal representation. It is time to bring this interminable chapter of this case to a close.

During oral argument on this motion, Montero appeared and opposed default judgment on the ground that, just before the hearing started, Cynthia Browning had entered a notice of appearance on defendants' behalf in this action. Attorney Browning is not new here. She previously appeared on defendants' behalf as a partner to Rebecca Turner, who replaced

4

original defense counsel in November 2016 and withdrew in August 2017. Attorney Browning withdrew even earlier, in April 2017, after her partnership with Attorney Turner dissolved and some apparent troubles in the attorney-client relationship (*see* Dkt. No. 177). Her reappearance after entry of default, on the cusp of the hearing on the instant motion, and under such unreliable circumstances does not warrant yet another round of delays and accommodations while this case continues to languish. Even now — and despite Attorney Browning's notice of appearance — we have no clear path to any resolution on the merits as to TLC Residential.

Under these circumstances, this order finds that the *Eitel* factors as a whole weigh in favor of default judgment notwithstanding the fifth and seventh factors weighing against. Nevertheless, entry of default judgment will be reserved pending a final opportunity for TLC Residential and Attorney Browning to be heard, as explained below.

### 2. DAMAGES.

Next, this order turns to the issue of damages, for which the Secretary must still provide proof. *See TeleVideo*, 826 F.2d at 917–18. An employee can recover unpaid wages under the FLSA by showing that (1) the employer's records were inadequate and (2) the employee performed work for which they were not compensated, provided that the employee produces sufficient evidence to show the amount and extent of said work "*as a matter of a just and reasonable inference.*" *Brock v. Seto*, 790 F.2d 1446, 1447–48 (9th Cir. 1986) (emphasis in original, citation omitted). Successful FLSA plaintiffs are also entitled to liquidated damages equal to the amount of their unpaid wages. 29 U.S.C. § 216(b) ("Any employer who violates the [minimum wage provision] of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages . . . and in an additional equal amount as liquidated damages."). "Double damages are the norm; single damages are the exception. Liquidated damages are mandatory unless the employer can overcome the difficult burden of proving both subjective good faith and objectively reasonable grounds for believing that it was not violating the FLSA." *Haro v. City of Los Angeles*, 745 F.3d 1249, 1259 (9th Cir. 2014) (citations and quotations omitted).

Here, TLC Residential's defense has been that its house parents were never employees to begin with. There is no dispute that TLC Residential did not compensate house parents for their work or keep records of such compensation. The question is therefore whether or not the Secretary produced sufficient evidence to show the amount and extent of said work as a matter of a just and reasonable inference.

The Secretary seeks $2,300,381.50. Half of that sum represents $1,150,190.75 in unpaid wages. The other half represents an equal amount in statutory liquidated damages. *See* 29 U.S.C. § 216(b). The Secretary seems to base these numbers on the declaration of Santiago Orona, a wage-and-hour investigator from the Department of Labor who investigated defendants and provides the actual computation consisting of line-by-line entries showing amounts owed to each of the 183 house parents (Dkt. No. 218-26). The Secretary also provided the declarations of house parents who attest that their work hours, while varied, ranged from approximately fifteen to thirty hours per week (*compare, e.g.*, Dkt. No. 218-8 ¶ 6 (house parent who worked 30–40 hours per week) *with* Dkt. No. 218-12 ¶ 8 (house parent who worked 15–25 hours per week)). These declarations remain consistent with Orona's conclusion that the house parents worked "at least 14 to 15 hours per week" (Dkt. No. 218-26 ¶ 10). Orona assumes they worked at the federal minimum wage of $7.25 per hour, an assumption adopted by the Secretary (*see* Dkt. Nos. 218-26, 219 at 14).

As to the appropriateness of liquidated damages, the Secretary suggests TLC Residential cannot carry its burden to prove both subjective good faith and objectively reasonable grounds for believing that it was not violating the FLSA because "the Secretary has alleged Defendant repeatedly and willfully violated and continues to violate the FLSA" (Dkt. No. 219 at 16). Those allegations, however, were entirely conclusory as to TLC Residential's willfulness. Moreover, TLC Residential's belief that its house parents were not employees to begin with — even if ultimately incorrect — provided objectively reasonable grounds for believing that it was not violating the FLSA. The question of TLC Residential's subjective good faith remains open. To answer this question, we will have an evidentiary hearing with both TLC Residential and Attorney Browning in attendance, as explained below.

### 3. INJUNCTIVE RELIEF.

The FLSA empowers district courts to enjoin future violations. 29 U.S.C. § 217. Our court of appeals has observed that prospective injunctions are "essential" to effectuating the policy of the FLSA "because the cost of noncompliance is placed on the employer." *Brock v. Big Bear Mkt. No. 3*, 825 F.2d 1381, 1383 (9th Cir. 1987) (citation omitted). In considering whether to grant such an injunction, a district court should look at "evidence of current compliance, especially if compliance has continued for a long period of time." *Ibid.* No such compliance appears on these facts. Moreover, "a district court must weigh the finding of violations against factors that indicate a reasonable likelihood that the violations will not recur. A dependable, bona fide intent to comply, or good faith coupled with extraordinary efforts to prevent recurrence, are such appropriate factors. An employer's pattern of repetitive violations or a finding of bad faith are factors weighing heavily in favor of granting a prospective injunction." *Ibid.* Because this analysis turns in part on a finding about TLC Residential's good faith (or lack thereof), it, too, would benefit from Montero's testimony at the upcoming evidentiary hearing.

### CONCLUSION

For the foregoing reasons, the Secretary's motion for default judgment is **HELD IN ABEYANCE** pending a **TWO-HOUR** evidentiary hearing on **MARCH 7 AT 8:00 A.M.** The Court will ask questions. The Secretary will have an opportunity for cross-examination.

Francisco Montero is **ORDERED** to appear in his capacity as owner of TLC Residential. Attorney Cynthia Browning, currently counsel of record for defendants, is also **ORDERED** to appear. TLC Residential and Attorney Browning are further **ORDERED** to **SHOW CAUSE** at the evidentiary hearing why default judgment should not be entered.

**IT IS SO ORDERED.**

Dated: February 20, 2018.

_____
WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE