1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

R. ALEXANDER ACOSTA, Secretary of
Labor, United States Department of Labor,

        Plaintiff,

  v.

TLC RESIDENTIAL, INC., and
FRANCISCO MONTERO,

        Defendants.

_____/

No. C 15-02776 WHA

**ORDER DENYING MOTION
TO VACATE JUDGMENT**

**INTRODUCTION**

In this FLSA action, defendants move to vacate the default judgment entered against them. For the reasons stated below, the motion is **DENIED**.

**STATEMENT**

In June 2015, the Secretary commenced this action under the Fair Labor Standards Act ("FLSA") against defendants TLC Residential, Inc., a corporation operating sober living homes, and Francisco Montero, TLC Residential's owner. The substance of the Secretary's claims has been laid out in prior orders and need not be repeated here (*see* Dkt. Nos. 106, 215). In short, the Secretary argued that TLC Residential's "house parents" were employees under the FLSA and therefore entitled to wages thereunder.

In April 2018, default judgment was entered in the instant action due to TLC Residential's persistent unwillingness or inability to retain counsel. The road leading up to default judgment was paved with numerous accommodations and missed opportunities for

defendants to obtain legal representation.  For example, in September 2016, defense counsel moved to withdraw and a prior order granted that motion (Dkt. Nos. 98, 114).  To accommodate defendants' loss of legal representation, an amended case management order postponed the trial date to May 2017 and then again to October 2017 (*see* Dkt. Nos. 124, 175).  In August 2017, then-new defense counsel also moved to withdraw (Dkt. No. 194).  The undersigned judge repeatedly warned Montero in written orders and during the hearing on the motion to withdraw (during which Montero appeared *pro se*) that his failure to retain counsel for TLC Residential would result in default judgment against the corporation (as a corporation cannot appear *pro se*) (*see, e.g.*, Dkt. Nos. 206, 209, 211).  Montero still failed to retain counsel for TLC Residential and trial was postponed yet again to March 2018 (Dkt. No. 214).  The Secretary subsequently moved for default judgment against TLC Residential (Dkt. No. 219).  Trial was postponed again to April 2018 to accommodate defendants (Dkt. No. 225).  An evidentiary hearing on TLC Residential's subjective good faith (an element necessary for damages) and hearing on an order to show cause why default judgment should not be entered were held (Dkt. No. 248).  Despite the Court's warnings, Montero appeared at the evidentiary hearing without counsel for TLC Residential (Dkt. No. 249 at 2).  In March 2018, following the evidentiary hearing, an order granted plaintiffs' motion for default judgment against TLC Residential for failure to retain counsel (Dkt. Nos. 230, 249).  On April 4, 2018, a final pretrial conference was held, during which then-defense counsel Attorney Stephen Russell specially appeared (Dkt. No. 287).  Montero, however, failed to appear at the final pretrial conference (*ibid.*).  On April 5, 2018, judgment was entered (Dkt. No. 291).  Defendants failed to timely appeal.

One year later, defendants now seek to vacate the judgment under Rules 60(b)(1)–(3) (Dkt. No. 397 at 2).  The premise of the motion is two-fold.  *First*, defendants argue that the judgment should be vacated because the Department of Labor Wage and Hour Investigator, Andrew Blanco, allegedly fabricated a document, which document was supposedly the basis for the instant action (*id.* at 1–2).  *Second*, defendants argue that their attorney of record "abandoned" them "on the eve of trial and failed to notify" them that they must attend trial and that she would not appear (*id.* at 2).  This order follows full briefing and oral argument.

**ANALYSIS**

Rule 60(b) provides the following grounds upon which a district court "may relieve a party or its legal representative from a final judgment, order, or proceeding":

> (1) mistake, inadvertence, surprise, or excusable neglect;

> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

> (3) fraud (whether previously intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party[.]

Defendants argue that under Rule 60(b)(1)–(3), they are entitled to relief from final judgment. This order disagrees.

*First*, defendants complain that Investigator Blanco submitted a Wage and Hour Division pre-litigation report (what defendants refer to as the "WHISARD Compliance Report"), upon which this action was based, that allegedly included a fraudulent statement of the Chapter 10b35 provision of the Department of Labor's Field Operations Handbook. This handbook is an internal agency "operations manual that provides Wage and Hour Division [] investigators and staff with interpretations of statutory provisions, procedures for conducting investigations, and general administrative guidance" (Dkt. No. 398 at 1 n.1). Specifically, Chapter 10b35 of the Field Operations Handbook stated as follows (Dkt. No. 397-1, Exh. 1 at 4–5 (emphasis in original)):

> [A] residential care program which seeks to establish a family setting for treatment of persons with drug or alcohol problems would *not* create an employment relationship under the Act between the residents and the institution where:

> (1) The work performed by the residents is that which is ordinarily done on a daily basis in a private home and is solely for the mutual benefit of the occupants of the home (institution).

> (2) Residents do not perform activities which would ordinarily be performed by full-time employees of the institution so that there is no displacement of regular full-time employees through substitution of resident workers.

> (3) Residents in the institution and performance of activities by the occupants is short-term (usual [*sic*] no more than a year) as opposed to generally long term occupancy in

3

such institutions as those concerned with the mentally ill, individuals with intellectual or developmental disabilities, the aged, or the terminally ill.

(4) The institution is relatively small, houses a limited number of residents, and has no paid staff other than counselors.

Defendants accuse Investigator Blanco of "intentionally omitt[ing]" the opening clause and replacing it with "however, all four (4) situations substantiate an employment relationship" in his report (Dkt. No. 397 at 3). Defendants, however, seem to misunderstand the context of Investigator Blanco's report. Investigator Blanco's report stated as follows (Dkt. No. 397-1, Exh. 2 at 2 (emphasis added)):

FOH 10b35: Residential Drug Abuse and Alcohol Treatment Programs describe[s] *four (4) "family setting" situations where an employment [relationship] would not exist*; however, all four (4) situations substantiate an employment relationship[.]

As the Secretary points out, Investigator Blanco *did* accurately cite Chapter 10b35 of the handbook by recognizing the four situations in which an employment relationship would *not* exist. He then went on to contrast the aforementioned four situations with the circumstances in this case to further support his finding of an employment relationship between TLC Residential and the house managers (Dkt. No. 60-20 at 11–14). As such, defendants offer no "newly discovered evidence" under Rule 60(b)(2) or clear and convincing evidence of fraud by the Secretary under Rule 60(b)(3).

*Second*, Rule 60(b)(1) offers no relief for defendants under these circumstances. Defendants seek relief from judgment because they "were abandoned by their attorney who failed to appear or prepare for trial" (Dkt. No. 397 at 5). Not so. As detailed above, defendants were given over two years to retain counsel. Multiple accommodations were granted — including many trial date postponements — in an effort to encourage defendants to retain counsel. Eventually, however, default judgment was entered because the Secretary otherwise would be "left without a remedy if Montero and TLC Residential, by continuously failing to retain or keep counsel, [were] permitted to mire this litigation in limbo indefinitely" (Dkt. No. 230 at 3).

The record clearly refutes defendants' charge of "surprise" or "excusable neglect." After many trial date postponements, the April 4 final pretrial conference and April 16 trial dates were finally set in January 2018 (Dkt. No. 225). Defendants were specifically served a copy of the order setting the April trial dates (Dkt. No. 225-1). That order again emphasized the need for TLC Residential to retain counsel (Dkt. No. 225 at 1–2). More pretrial documents and orders were served on Montero, which reminded him of the April trial dates (*e.g.*, Dkt. Nos. 256, 264). Only Attorney Russell specially appeared at the final pretrial conference, during which he stipulated to Montero's ownership and management of TLC Residential (Dkt. No. 399-2 ¶ 4). Montero failed to appear at said April 4 final pretrial conference (Dkt. No. 287). Thus only after many failed attempts to allow defendants a chance to obtain counsel for trial, the Court entered judgment against TLC Residential thereafter (Dkt. No. 291).

True, Attorney Browning moved to withdraw as counsel twice on the eve of the show cause hearing regarding the Secretary's motion for default judgment — the first motion which was denied the same day it was filed and the second motion which was denied after the show cause hearing (Dkt. Nos. 245–47, 250). And, the latter order denying Attorney Browning's second motion to withdraw also referred the matter to the Court's Standing Committee on Professional Conduct due to her failure to appear at the evidentiary and show cause hearing (Dkt. No. 250 at 3). But defendants can hardly claim that Attorney Browning's failure to appear at the show cause hearing (a hearing held because defendants had failed to retain counsel up until then) was a "surprise." Given defendants' long, drawn-out struggle to retain counsel and the many opportunities the Court afforded to encourage defendants to find counsel, defendants' lack of legal representation cannot be described as "excusable neglect" within the meaning of Rule 60. In light of the Court's repeated efforts to accommodate defendants' persistent failure to obtain counsel, defendants may not now seek relief from judgment one year after the fact. *See Lemoge v. United States*, 587 F.3d 1188, 1192 (9th Cir. 2009) ("The determination of whether neglect is excusable is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." (citation and internal quotation marks omitted)).

Nor did Attorney Browning's conduct amount to "gross negligence" akin to "virtual abandonment" by counsel such that it amounted to an "extraordinary circumstance" justifying the vacating of the default judgment under Rule 60(b)(6). This case is distinguishable from *Community Dental Services v. Tani*, 282 F.3d 1164 (9th Cir. 2002), where our court of appeals found "gross negligence" by the defense counsel. That counsel, for example, repeatedly failed to follow court orders, filed an answer two weeks late, failed to provide the plaintiff a copy of the answer, failed to oppose the plaintiff's motion to strike the answer, failed to attend various hearings, and explicitly (and misleadingly) represented to the defendant that the case "was proceeding properly." *Id.* at 1171. In contrast, Attorney Browning appeared as counsel as a last minute stand-in after a revolving door of appearances by prior defense counsel and notified defendants of her desire to withdraw as counsel once it allegedly became apparent that defendants were unwilling or unable to foot the bill (Dkt. Nos. 247 ¶¶ 2–3; 247-1 ¶¶ 3–8). In fact, Attorney Browning stated that she "ceased work on this litigation effective February 24, 2018, *at the request of Defendant Francisco Montero*" (Dkt. No. 247 ¶ 3 (emphasis added)). Ultimately, defendants' own conduct is just as much to blame for their inability to retain counsel for the show cause hearing held on March 7. *See Tani*, 282 F.3d at 1172 ("A proper finding of culpable conduct by [the defendant] would be sufficient to justify the district court's refusal to grant a Rule 60(b) motion.")

Defendants further contend that the Secretary "took quick advantage of Ms. Browning's abandonment and pursued their judgment, knowing that it was based upon a misrepresentation of what was appropriate under their own Handbook" (Dkt. No. 397 at 6–7). But again, the record clearly demonstrates otherwise. As a prior order held (Dkt. No. 230 at 4),

> [D]espite extensive discovery, motion practice, and multiple accommodations by both the Court and the Secretary, defendants' failure to retain and keep legal counsel ha[d] time and again frustrated attempts to bring this matter to a final resolution on the merits. At th[at] point, the merits ha[d] already been demoted to a footnote in a protracted struggle over defendants' legal representation. It [was] time to bring th[at] interminable chapter of this case to a close.

In light of the extreme circumstances of this case, defendants have also failed to show that they are entitled to relief under Rule 60(b)(1) or (6).

**CONCLUSION**

For the foregoing reasons, defendants' motion to vacate the default judgment is **DENIED**.

**IT IS SO ORDERED.**

Dated:  May 30, 2019.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE